UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 0:22-cr-00288 (JNE) |
| Plaintiff, | |
| v. | DEFENDANT'S SENTENCING POSITION |
| Bradley Hans Ratgen, | |
| Defendant. | |

## INTRODUCTION

Because of the mistakes and bad choices he has made, Mr. Ratgen's legal career is effectively over, he is a convicted felon, and his reputation in the community is in shambles. Mr. Ratgen makes no excuses for his misconduct. He knows he was violating the law, has admitted as much, and now he is suffering the consequences, including the sentence to be imposed in this case. His guideline sentence range is 10-16 months of imprisonment or split imprisonment/home confinement; however, several factors support a downward variance to a sentence of strictly home confinement.

First, and most importantly, Mr. Ratgen is the parent of a special-needs child whose combination of Down Syndrome and Autism Spectrum Disorder requires a substantial amount of individualized personal care. The "care crunch" in Mr. Ratgen's family if he is incarcerated is likely to be especially acute given the separate care needs of his other minor children and the financial hardship resulting from the implosion of Mr. Ratgen's legal career.

Second, Mr. Ratgen promptly and fully accepted responsibility for his bad decisions, working cooperatively with the government to prepare and execute a guilty plea by Felony Information, and he is in the process of voluntarily surrendering his law license. While he has received the standard two-level deduction for this acceptance of responsibility, the prompt and fulsome way he resolved this case deserves consideration at sentencing.  Finally, the need for punishment and deterrence in this case has already been addressed to some extent by the collateral consequences of Mr. Ratgen's plea – namely the loss of his law license, the publicized immolation of his professional career, and the collapse of his reputation in the community.

Mr. Ratgen agrees that a purely probationary sentence in his case would not serve the purposes of sentencing and that a term of confinement is warranted, especially given that he abused the special privileges and trust that come with admission to the legal profession in committing his misconduct.  That said, because of Mr. Ratgen's personal circumstances, a sentence of imprisonment would be greater than necessary to achieve the purposes of sentencing.  A substantial sentence of home confinement, however, when combined with restitution and a term of supervised release would be sufficient but not greater than necessary to achieve the goals of sentencing.  Accordingly, Mr. Ratgen respectfully requests that the Court impose a sentence of eight months home confinement.

## GUIDELINES CALCULATIONS

Mr. Ratgen pled guilty to a felony information charging Conspiracy to Commit Health Care Fraud pursuant to 18 U.S.C. § 1347.  Mr. Ratgen's total offense level is 12, which includes a 2-level enhancement to account for Mr. Ratgen's use of his law license

to facilitate his misconduct. PSR ¶ 73. Other than a couple traffic tickets, Mr. Ratgen has a clean criminal record, which places him in criminal history category I. PSR ¶ 38-40. Accordingly, Mr. Ratgen's guideline sentence is 10-16 months of incarceration to be served through either (1) a sentence of imprisonment; or (2) a split term of imprisonment and home or community confinement. PSR ¶ 73.

## SENTENCING FACTORS

18 U.S.C. § 3553(a) controls imposition of a sentence and lists numerous factors to be considered by the Court during sentencing, including the offense conduct, the defendant's personal history and characteristics, and the guideline sentence range, among others. The Court's consideration at sentencing is not limited to the section 3553 factors, however, and ultimately the Court must "consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Gall v. United States*, 552 U.S. 38, 46 (2007).

As discussed below, the circumstances here warrant a downward variance to a sentence of eight months home confinement, which will allow Mr. Ratgen to provide necessary care to his special-needs child and other minor children while still serving the deterrent and punitive purposes of sentencing.

### A. Mr. Ratgen's Background and Family Life Support a Downward Variance.

Mr. Ratgen has been married to his wife Carla for 27 years. PSR ¶ 45. They have five children together. *Id.* One of their children – Bailey – has Down Syndrome and

autism. Bailey is 20 years-old, nonverbal, and cannot live independently or care for himself. *Id.* Over time, the family has cobbled together a system for communicating with Bailey that includes improvised sign language, interpreting the grunts and other noises Bailey makes, and using a device called a Dynavox that can assemble sentences based on Bailey choosing pictures on the device to communicate what he needs. Bailey is currently enrolled in a public-school program for special needs individuals called the "Journey" program, which he will age out of on June 30, 2023. Beginning July 1, Bailey will be at home all day, every day, requiring constant individualized care. Caring for Bailey demands special vigilance because he routinely runs away from home. The family has combination door locks and multiple other locks to keep Bailey from getting out of the house, but someone must nonetheless be caring for him almost constantly.

Mr. and Mrs. Ratgen also have two minor children still living at home. *Id.* At times, because of concerns about Bailey's potential COVID exposure, Mrs. Ratgen has taken Bailey to live at a cabin in northern Minnesota for substantial periods of time. During these extended absences, Mr. Ratgen has stayed in Lino Lakes to care for the couple's minor children, an arrangement that will be impossible to manage if Mr. Ratgen is incarcerated and a COVID outbreak again drives Bailey and Mrs. Ratgen up North.

Caring for Bailey is deeply intensive, physically and emotionally, and arranging for substitute care is incredibly complicated. Any sentence of incarceration will impair the family's ability to provide Bailey the constant, individualized care he needs, whereas a sentence of home confinement would enable Mr. Ratgen to provide care for Bailey while still serving out a sentence of confinement.

### B. Mr. Ratgen's Prompt Acceptance of Responsibility Supports a Downward Variance.

After the government informed Mr. Ratgen it believed he had violated the law, Mr. Ratgen promptly indicated that he wanted to accept responsibility and work out a plea agreement with the government. The government and Mr. Ratgen worked together to draft the Felony Information and Plea Agreement filed in this case. While Mr. Ratgen has received the standard two-level reduction for acceptance of responsibility (the third level being unavailable due to his initial low offense level), his prompt acceptance and cooperation distinguishes him from the the vast majority of defendants who receive an identical two-level reduction after indictment and substantial back-and-forth with the government. Mr. Ratgen's early, fulsome acceptance is worthy of at least some additional consideration when weighing whether to vary downward here.

### C. The Collateral Consequences to Mr. Ratgen's Professional Career Support a Downward Variance.

Mr. Ratgen has admitted that Minnesota insurance companies paid out monies they would not have otherwise paid had they known of the financial arrangements between himself, chiropractors, runners and patients. It should be noted, however, that while Mr. Ratgen crossed the line with some of his clients, and accepts responsibility for those bad decisions, Mr. Ratgen's bad decisions are not the sum of his legal practice. On the contrary. Over the years, Mr. Ratgen developed a practice helping those with limited means get compensation from oft-begrudging insurance companies. He specialized in representing immigrants – blue collar and working-class folks – many of whom were refugees from East and West Africa (Gambia, Eritrea, Ethiopia, Somalia), Asia (Qatar,

Armenia, Vietnam, Laos, Cambodia, Myanmar) and numerous Spanish-speaking countries (Mexico, Colombia, Argentina, Chile, Ecuador, Cuba, etc.). These clients were not expecting big-dollar personal injury settlements, but they nonetheless needed legal help. Mr. Ratgen was there to provide it, which benefited himself, to be sure, but also his clients and the community as a whole, all of which gave him great personal and professional satisfaction as well as allowing him to earn a good living.

Mr. Ratgen is in the process of winding up his law firm and voluntarily surrendering his law license. It is unclear to what extent he will be able to use his legal education and experience to earn money going forward, but one thing is clear: his career as a lawyer is over. Not surprisingly, Mr. and Mrs. Ratgen are concerned about how they are going to balance taking care of Bailey with the financial pressures resulting from the end of Mr. Ratgen's professional career. The destruction of Mr. Ratgen's professional career and the circumstances of his guilty plea have been the subject of several rounds of news coverage, which has been humiliating for Mr. Ratgen and his family. These publicly broadcast and personally devastating collateral consequences at least partly address the need to punish Mr. Ratgen and deter other lawyers from engaging in similar misconduct, which should be considered when determining Mr. Ratgen's sentence.

      **D.    A Home Confinement Sentence Is Appropriate.**

Home confinement is appropriate where interests of deterrence and just punishment support a term of confinement, but the defendant's personal circumstances make *home* and not BOP confinement the sentence sufficient but not greater than necessary to achieve the purposes of sentencing. *See, e.g., United States v. Oldani*, No. CRIM.A. 3:09-00010, 2009

WL 1770116, at *8 (S.D.W. Va. June 16, 2009) (varying downward from guideline range of 46 to 57 months and imposing sentence of five months imprisonment followed by eight months of community confinement); *United States v. Underhill*, No. 10-1072, 2011 WL 33796, at *2 (3d Cir. Jan. 6, 2011) (affirming downward variance from 12-18 month guideline sentence to six months community confinement and six months home detention).

Home confinement is a substantively reasonable alternative to imprisonment when confinement in a BOP facility would impact not just the defendant but those who depend on him for care and support. *E.g., United States v. Lehman*, 513 F.3d 805, 809 (8th Cir. 2008) (affirming sentence of probation and home confinement where district court found that "sending [defendant] to prison would have a very negative effect on the emotional development of her young son . . .").

Accordingly, courts have imposed sentences of home confinement where a defendant's incarceration would negatively impact his or her child. *E.g., id.*; *United States v. Cox*, 271 F. Supp. 3d 1085, 1088 (S.D. Iowa 2017) (varying downward to a probationary sentence and explaining that " 'in fashioning a sentence sufficient, but not greater than necessary' . . . the welfare of a defendant's children must be fully considered"); *United States v. Campbell*, 738 F. Supp. 2d 960, 973 (D. Neb. 2010) (varying downward to impose sentence of home confinement based in part on defendant's step-son suffering from Asperger's disorder).

As discussed above, Mr. Ratgen's special-needs child Bailey requires an extraordinary amount of care and attention, a need that will become more acute when Bailey ages out of the public special education program currently providing some of the

individualized care Bailey needs during the week. As in *Lehman*, *Cox*, and *Campbell*, a sentence of home confinement will limit the negative impact on Bailey and Mr. Ratgen's whole family by keeping Mr. Ratgen present in the home and available to provide Bailey and the other minor children with care. Notably, the Court could impose a guideline sentence here that includes a 50/50 split between imprisonment and home confinement. It would require a limited downward variance to impose a sentence of purely home confinement and enable Mr. Ratgen to care for Bailey and his other kids.

## CONCLUSION

The collateral consequences to Mr. Ratgen of losing his professional career and the damage to his reputation, his unusually prompt and fulsome acceptance of responsibility, and his family circumstances – especially the ongoing care needs of his son Bailey – support a downward variance and a sentence that includes home confinement as opposed to imprisonment.

Mr. Ratgen respectfully requests that the Court grant him a downward variance and impose a sentence of eight months of home confinement, which will enable Mr. Ratgen to care for his special-needs son while still providing a sentence sufficient but not greater than necessary to achieve the purposes of sentencing.

| | |
|---|---|
| Dated: February 28, 2023 | s/ Kevin C. Riach<br>Kevin C. Riach (#0389277)<br>**THE LAW OFFICE OF KEVIN C. RIACH**<br>125 SE Main Street, Suite 339<br>Minneapolis, MN 55402-1425<br>Telephone: (612) 203-8555<br>Email: kevin@riachdefense.com<br><br>**ATTORNEY FOR DEFENDANT** |